**Fill in this information to identify the case:**

Debtor 1 __James Ellis__
Debtor 2 __Taheesh Ellis__
(Spouse, if filing)
United States Bankruptcy Court __Northern District of Illinois__
Case number: __18-25883__

FILED
U.S. Bankruptcy Court
Northern District of Illinois
10/30/2018

EXHIBIT A

6

## Official Form 410
## Proof of Claim

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

### Part 1: Identify the Claim

**1. Who is the current creditor?**
Augusta Village Homeowners
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**
☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?
Augusta Village Homeowners
Name
Keay & Costello, P.C.
128 S. County Farm Road
Wheaton, IL 60187

Contact phone __630-690-6446__
Contact email __kimberlynnek@gmail.com__

Where should payments to the creditor be sent? (if different)
Name _____

Contact phone _____
Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):
_____

**4. Does this claim amend one already filed?**
☑ No
☐ Yes. Claim number on court claims registry (if known) _____ Filed on _____ MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**
☑ No
☐ Yes. Who made the earlier filing? _____

Official Form 410                    Proof of Claim                    page 1

**Part 2: Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. Do you have any number you use to identify the debtor? | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |
| 7. How much is the claim? | $ 705.00   **Does this amount include interest or other charges?**<br>☐ No<br>☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
| 8. What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br>Association common expense |
| 9. Is all or part of the claim secured? | ☐ No<br>☑ Yes. The claim is secured by a lien on property.<br>**Nature of property:**<br>☑ Real estate.  If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>**Basis for perfection:** Association lien<br><br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:** $ 289790.00<br>**Amount of the claim that is secured:** $ 705.00<br>**Amount of the claim that is unsecured:** $ 0.00  (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:** $ _____<br><br>**Annual Interest Rate (when case was filed)** ____ %<br>☑ Fixed<br>☐ Variable |
| 10. Is this claim based on a lease? | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |
| 11. Is this claim subject to a right of setoff? | ☑ No<br>☐ Yes. Identify the property: _____ |

Official Form 410                              Proof of Claim                              page 2

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No<br>☐ Yes. *Check all that apply:* | Amount entitled to priority |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies | $ |
| | * Amounts are subject to adjustment on 4/1/19 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.
18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   10/30/2018
                   MM / DD / YYYY

/s/ Benjamin J. Rooney
Signature

Print the name of the person who is completing and signing this claim:

Name: Benjamin J. Rooney
      First name   Middle name   Last name

Title:

Company: Keay & Costello, P.C.
Identify the corporate servicer as the company if the authorized agent is a servicer

Address: 128 S. County Farm Road
         Number Street
         Wheaton, IL 60187
         City   State   ZIP Code

Contact phone   630-690-6446        Email   ben@keaycostello.com

Official Form 410                   Proof of Claim                          page 3

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 10/29/2018 8:43 AM | | | | Resident Transaction Report<br>AUGUSTA VILLAGE HOMEOWNERS ASSN.<br>Dates 01/01/2000 to 10/29/2018 | | | | Page: 1 |

AU-CARO Carolina Street  
Carolina Street  
Bolingbrook IL 60490

FirstService Residential  
400 Campus Dr.  
Suite 101  
Collegeville PA 19426

| Unit | Space | Resident | Type | Date | CC | Description | Check | Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|
| 0235 | 01 | James Ellis | App# | 139817 | | | Beg Bal | | 0.00 |
| | | Taheesh Ellis | Chg | 01/01/2018 | A3 | ASSOC. FEES-ANNUAL | | 330.00 | 330.00 |
| | | 235 Carolina St | Chg | 01/16/2018 | LC | LATE FEES | | 75.00 | 405.00 |
| | | Bolingbrook IL 60490 | Chg | 04/03/2018 | 01 | Demand Letter | | 35.00 | 440.00 |
| | | | Chg | 05/01/2018 | 02 | Certified Demand | | 65.00 | 505.00 |
| | | | Chg | 09/13/2018 | 05 | LITIGATION SUPPORT | | 75.00 | 580.00 |
| | | | | | | | End Bal | | 580.00 |

10/30/18 BK legal Fee    125.00   705.00

**MARY ANN STUKEL**     **60P**
Will County Recorder
Will County
**R 2003182527**     **Page 1 of 60**
PCI Date 07/29/2003    Time 13:08:59
Recording Fees:      74.00

# AUGUSTA VILLAGE

# DECLARATION OF COVENANTS

# CONDITIONS AND RESTRICTIONS

# BOLINGBROOK, ILLINOIS

CH01/12205149.8

Village Property once the Village Property is conveyed to the Village by dedication and/or deed, subject to the provisions of this Declaration.

SECTION 4.6.    <u>Failure of Association to Maintain, Repair or Replace</u>. In the event the Association fails to maintain, repair or replace Common Area and any improvements thereto or any improvements located within public rights-of-way within or abutting the Property that are the responsibility of the Association to maintain, the Village may (but shall not be required to) effect such maintenance, repairs or replacements and the Village shall be entitled to reimbursement in full from the Lot Owners for its costs, including reasonable attorneys' fees, incurred in connection therewith.

## ARTICLE 5.

## COVENANT FOR ASSESSMENTS

SECTION 5.1.    <u>Creation of the Lien and Personal Obligation of Assessments</u>. Each Owner of any Lot, by acceptance of a deed therefor or possession thereof (whether or not it shall be so expressed in any such deed or other conveyance), is deemed personally and individually to covenant and agree to pay to the Association the Assessments authorized under this Declaration. In addition, Declarant hereby covenants and agrees for each Lot owned by Declarant within the Property to pay to the Association the Assessments authorized under this Declaration, subject to the provisions set forth in Sections 5.8 and 5.9. All such Assessments shall be fixed, established and collected from time to time as provided in this Declaration. The Assessments, together with interest thereon, attorneys' fees and costs of collection thereof, as hereinafter provided, shall be a charge on the land and shall be a continuing lien upon the Lot against which each such Assessment is made. Each such Assessment (and deficiency contributions, in the case of Declarant), together with such interest, costs and reasonable attorneys' fees, shall also be the personal obligation of the Owner of such Lot at the time when the assessment falls due. This personal obligation shall pass to each Owner's successors in title accepting a deed to or assignment of beneficial interest in any trust holding title to an Owner's Lot.

SECTION 5.2.    <u>Base Annual Assessments</u>. The Association is authorized to levy Base Annual Assessments equally against all Lots subject to assessment, which shall be paid by the Owners of all Lots within the Property, to fund common expenses for the general benefit of all Owners. Base Annual Assessments shall be used for the following purposes:

   (a)    maintenance, repair, replacement and improvement of Common Area, and all landscaping or other improvements thereon, including without limitation any landscape buffers, detention ponds, swales, wetlands recharge areas and streams or brooks and any lighting, gazebos and other structures located thereon ;

   (b)    maintenance, repair and replacement of any landscaping located within Dedicated Rights-of-Way that are the responsibility of the Association to maintain under the terms of this Declaration;

7

(c) maintenance, repair and replacement of any landscaping located within Dedicated Rights-of-Way that are the responsibility of the Village to maintain, to the extent such landscaping is not maintained, repaired or replaced by the Village;

(d) payment of premiums on insurance maintained by the Association pursuant to this Declaration; and

(e) to provide funds for the Association to carry on its duties or exercise its rights set forth herein or in its Articles of Incorporation or By-Laws or in the Illinois Not-For-Profit Corporation Act.

SECTION 5.3. Special Assessments. The Association is authorized to levy Special Assessments to cover unbudgeted expenses or expenses in excess of those budgeted, for the following purposes:

(a) defraying in full or in part the cost of any construction, reconstruction, repair or replacement of any improvement on Common Area or any improvements which are the responsibility of the Association, including without limitation the necessary fixtures, personal property or landscaping located on or related to Common Area, and all landscaping or other improvements thereon; and

(b) defraying in full or in part the cost of, and providing of funds to the Association, for carrying on any of its duties set forth in this Declaration or in its Articles of Incorporation or By-Laws or the Illinois Not-For-Profit Corporation Act.

Any Special Assessments shall have the assent of a majority of the votes of the Members that are subject to such Special Assessment voting in person or by proxy at a meeting duly called for such purpose, at which a quorum is present, written notice of which shall be sent to all such Members not less than five (5) days nor more than forty (40) days in advance of the meeting, setting forth the purpose of the meeting. Unless the Special Assessment specifies that it shall be applicable to a specified number of years, it shall be applicable only to the year enacted. In the event a Special Assessment is to be levied on less than all of the Lots located within the Property, such Special Assessment may, by the action described herein, be levied against only those Lots which benefit by such Special Assessment, in proportion to their benefit, and not against the other Lots in the Property.

SECTION 5.4. Capital Contributions. The Association is authorized to levy Capital Contributions against all Lots as provided herein. At the time of the initial sale of each Lot from Declarant to any Owner, such Owner shall pay to the Association a Capital Contribution, which shall be a sum equal to six (6) monthly payments of the Base Annual Assessment then in effect. The Capital Contributions shall be used by the Association to cover operating expenses and other expenses incurred by the Association pursuant to this Declaration and the By-Laws. The Capital Contributions for any Lot shall be levied only upon the sale by Declarant to an Owner and shall not be levied on any subsequent sales of the Lot.

SECTION 5.5.   **Basis for and Maximum Amount of Base Annual Assessments.** Until December 31st of the year in which occurs the conveyance of the first Lot to an Owner, the maximum Base Annual Assessment shall be $300.00.

(a)   From and after January 1st of the year immediately following the conveyance of the first Lot to an Owner, the maximum Base Annual Assessment may be increased effective January 1st of each year by the Board of Directors of the Association (at any meeting of the Board of Directors duly convened at least thirty (30) days prior to said January effective date) without a vote of the membership, provided that any such increase shall not be greater than a ten percent (10%) increase over the maximum Assessment permitted for the year immediately preceding for such type of Assessment.

(b)   From and after January 1st of the year immediately following the conveyance of the first Lot to an Owner, the Base Annual Assessment may be increased for any year by the Board of Directors of the Association at any time, over the maximum Base Annual Assessment permitted for the year immediately preceding, without the vote of the membership, if the same is necessary to pay the costs of (i) any increases in real estate taxes for Common Area over the prior year; or (ii) any increases in the maintenance of Common Area or any improvements thereon over the prior year; or (iii) any increases in premiums for insurance procured by the Association over the prior year.

(c)   From and after January 1st of the year immediately following the conveyance of the first Lot to an Owner, the maximum Base Annual Assessment may be increased for the coming assessment year only for all succeeding assessment years effective January 1st of each year by the Board of Directors at any meeting of the Board of Directors (duly convened at least thirty (30) days prior to said January 1st effective date) in an amount greater than provided in subsections (a) or (b) hereof for the coming assessment year, provided that any such change shall have the assent of the majority of the votes of the Members that pays such Assessment voting in person or by proxy, at a meeting duly called for such purpose, at which a quorum is present, written notice of which will be sent to all Members that pay such Assessments not less than five (5) days nor more than forty (40) days in advance of the meeting, setting forth the purpose of the meeting.

(a)   After consideration of future needs and expected expenditures of the Association, the Board of Directors may fix either type of Assessment in lesser amounts than the maximum Assessments permitted or may, in its discretion, require no Assessment of either type whatsoever for any year, but such action shall not limit or prohibit the Board of Directors from fixing such Assessments for any year(s) following on the basis of increases in the maximum Assessments permitted hereunder rather than the assessments so fixed.

9

CH01/12205149.8

SECTION 5.6. <u>Reasonable Reserves</u>. The Association shall establish and maintain from Base Annual Assessments collected hereunder reasonable reserves for the costs of the maintenance, repair and replacement of those items which are the responsibility of the Association. The Association may establish and maintain such other reasonable reserves as the Board of Directors deems necessary and convenient which are consistent with the powers and duties of the Association.

SECTION 5.7. <u>Uniform Rate of Assessment</u>. Base Annual Assessments must be fixed at a uniform rate for all Lots subject thereto. Base Annual Assessments may be collected on a quarterly basis or such other periodic basis as set by the Board of Directors.

SECTION 5.8. <u>Assessment for Lots Owned by Declarant</u>  Notwithstanding the foregoing provisions, Base Annual Assessments and Special Assessments for any Lots while (i) owned by Declarant and improved with a completed residence, but unoccupied by any tenant of Declarant, or (ii) owned by any party but occupied by Declarant and used as a model or a sale office, shall be limited to 25% of the amounts fixed with respect to such type of Lots owned by Owners other than Declarant. Prior to the completion of a residence on any Lot, (which shall mean the issuance of a certificate of occupancy therefor by the Village), such Lot shall be exempt from payment of any and all Assessments.

SECTION 5.9. <u>Deficiency Contributions</u>. For every calendar year during which Declarant remains a Class B Member of the Association, Declarant shall contribute to the Association all funds in excess of the budgeted and collected Assessments which shall be necessary to defray the costs properly paid or incurred by it for the purposes for which Base Annual Assessments may be collected, all without limitation to the maximum amounts provided under Section 5.5 hereof. Declarant's contribution for the calendar year during which Declarant's Class B membership terminates shall be prorated to the date of such termination. For purposes hereof, the establishment of reserves pursuant to Section 5.6 does not constitute the payment or incurring of costs by the Association and Declarant's deficiency contribution shall not be required to be applied to the establishment of reserves.

SECTION 5.10. <u>Date of Commencement of Annual Assessments; Due Dates</u>. Base Annual Assessments provided for herein shall commence for any Lot within the Property, or any land annexed to the Property, on the day of the conveyance of the first Lot of such type in the Property and shall be prorated for the month of said conveyance. The Board of Directors shall fix the amount of such Assessments at least thirty (30) days in advance of each annual Assessment period, and in lieu thereof, the amount of each type of such Assessment for the prior year shall be the fixed amount. Written notice of any changed amount of the such Assessments shall be sent to every Owner subject thereto, but failure to do so shall not invalidate the changed Assessments. Base Annual Assessments shall be payable in quarterly installment or such other periodic basis set by the Board of Directors.

SECTION 5.11. <u>Certificate of Payment</u>. The Association shall, upon demand, furnish to any Owner liable for said Assessments, a certificate in writing signed by an officer of the

Association, setting forth whether the Assessments on a specified Lot have been paid and the amount of the delinquency, if any. A reasonable charge may be made by the Board of Directors for the issuance of such certificates. Such certificates shall be conclusive evidence that any Assessment therein stated to have been paid has in fact been paid. No charge shall be made for issuing from time to time said certificates to Declarant on Lots then owned by Declarant.

SECTION 5.12. **Delinquency in Payment of Assessments**. Any Assessment provided for in this Declaration which is not paid when due, shall be delinquent. With respect to each Assessment not paid within fifteen (15) days after its due date, the Association may, at its election, require the Owner to pay a "late charge" in a sum to be determined by the Association and applied uniformly. If any such Assessment is not paid within thirty (30) days after the delinquency date, the Assessment shall bear interest from the date of delinquency at the highest rate permitted by Illinois law, and the Association may, at its option, bring an action at law against the Owner personally obligated to pay the same, or foreclose the lien (provided for in Section 6.1 hereof) against the Lot, and there shall be added to the amount of such Assessment the late charge, the costs of preparing and filing a Complaint in such action and reasonable attorneys' fees, and in the event a judgment is obtained, such judgment shall include all Assessments accrued from date of suit to judgment, increased by such late charges, costs and fees, plus interest. Each Owner vests in the Association or its assigns, the right and power to bring all actions at law or lien foreclosures against such Owner for the collection of such delinquent assessments

SECTION 5.13. **Suspension of Voting Rights Due to Unpaid Assessments**. The Association is authorized to suspend the voting rights of an Owner for any period during which any Assessment against such Owner's Lot remains unpaid and delinquent, and for a period not to exceed thirty (30) days for any single infraction of the published rules and regulations of the Association, provided that any suspension of such voting rights, except for failure to pay Assessments, shall be made only by the Association or a duly appointed committee thereof, after notice and hearing given and held in accordance with the By-Laws or rules and regulations of the Association. The foregoing shall not apply to unfunded deficiency contributions of the Declarant under Section 5.9.

SECTION 5.14. **Waiver of Use**. No Member may exempt himself from personal liability for Assessments duly levied by the Association nor release the Lot owned by him from the liens and charges hereof, by waiver of the use and enjoyment of Common Area or by abandonment of his Lot.

SECTION 5.15. **Subordination of the Lien to Mortgages**. The lien of the Assessments provided for herein shall be subordinate to the lien of any first mortgage or trust deed. Sale or transfer of any Lot shall not affect the Assessment lien. However, the sale or transfer of any Lot pursuant to the foreclosure of a mortgage or trust deed or any proceeding or deed in lieu thereof shall extinguish the lien of such Assessments as to payments which become due prior to such sale or transfer. No sale or transfer shall relieve such Lot from liability for any Assessments thereafter becoming due or from the lien thereof.

# ARTICLE 6.

## PROPERTY RIGHTS

SECTION 6.1. <u>Members' Easements over Common Area</u>. Every Member shall have a right and easement for ingress and egress over and across, and for use of and enjoyment in and to, Common Area and the improvements thereon, and such easements shall be appurtenant to and shall pass with the title to every Lot. Reference in the respective deeds of conveyance, or in any mortgage or trust deed or other evidence of obligation, to the easements and covenants herein described shall be sufficient to create and reserve such easements and covenants to the respective grantees, mortgagees or trustees of said parcels as fully and completely as though said easements and covenants were fully recited and set forth in their entirety in such documents. Said right of easement for ingress and egress over and across, and of enjoyment in and to, Common Area and improvements located thereon shall be subject to the following provisions:

(a) The right of the Association, in accordance with its Articles of Incorporation and By-Laws, to borrow money for the purposes of improving or reconstructing Common Area and improvements thereto and in aid thereof to mortgage said Common Area (or a portion thereof).

(b) The right of the Association to declare or grant easements and licenses and to dedicate or transfer all or any part of Common Area to any public agency, authority, or public or private utility for such purposes and subject to such conditions as may be agreed to by the Members. No such dedication or transfer shall be effective unless an instrument has been recorded, signed by the Association and authorized by the assent of at least sixty-seven percent (67%) or more of the votes of each class of Members present in person or by proxy and entitled to vote at a meeting duly called for such purpose at which a quorum is present, written notice of which is mailed to all Members not less than five (5) days nor more than forty (40) days in advance of the meeting, setting forth the purposes of the meeting.

(c) The right of the Association to establish uniform rules and regulations (including fines) pertaining to the use of Common Area; provided, however, that the Association shall not limit or prohibit the public use of pathways located within the Property.

(d) The right of the Association to suspend an Owner's right to use any improvements located within Common Area (i) for any period during which any charge against such Owner's Lot remains delinquent; and (ii) for a period not to exceed thirty (30) days for a single violation or for a longer period in the case of any continuing violation, of this Declaration or the rules and regulations of the Association after written notice thereof.